## IN THE UNITED STATES DISTRICT COURT FOR THE
## WESTERN DISTRICT OF OKLAHOMA

TONYA LEIGH SIMMONS                    )
                                       )
     Plaintiff,                      )
vs.                                    )          Case No. CIV-06-79-F
                                       )
THE BOARD OF COUNTY                    )
COMMISSIONERS FOR JACKSON              )
COUNTY, OKLAHOMA, and MORRIS           )
ROBERTS, individually and in his       )
official capacity as the JACKSON       )
COUNTY SHERIFF,                        )
                                       )
     Defendants.                     )

## ORDER

This matter comes before the court upon the parties' cross motions for summary judgment. Neither motion has merit; both are accordingly denied.

In their motion filed on September 12, 2006 (doc. no. 45), the defendants seek summary judgment in their favor on two separate grounds. First, they argue that neither the Board of County Commissioners for Jackson County, Oklahoma nor Sheriff Roberts in his official capacity can be held liable to the plaintiff because the allegedly untimely and inadequate medical care at the heart of the plaintiff's claims did not constitute a constitutional violation. Second, they assert that Sheriff Morris Roberts is entitled to qualified immunity from the plaintiff's claims against him in his individual capacity. In her motion filed on October 12, 2006 (doc. no. 78), the plaintiff, Tonya Simmons, seeks partial summary judgment on the issue of Jackson County's liability for violation of Angela Biddy's constitutional rights. Both motions have been fully briefed, and after careful

consideration of the parties' submissions, the record, and all relevant arguments and authorities, the court makes its determination.

## Summary Judgment Standard

Summary judgment is appropriate only if there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law. Rule 56(c), Fed. R. Civ. P.  The moving party has the burden of showing the absence of a genuine issue of material fact.  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  A genuine issue of material fact exists when "there is sufficient evidence favoring the non-moving party for a jury to return a verdict for that party."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986).  In determining whether a genuine issue of material fact exists, the court must review the record in the light most favorable to the party opposing summary judgment. National Aviation Underwriters, Inc. v. Altus Flying Service, Inc., 555 F.2d 778, 784 (10th Cir. 1977).

## Nature of the Case

On the night of Monday, February 28, 2005, 33-year-old Angela Biddy was arrested.  She was booked into the Jackson County Jail by jailer Ulysses Bridges. Ms. Biddy reported that she had diabetes and cancer, and Mr. Bridges noticed that her left eye was swollen, cloudy, and partially closed.  On Wednesday, March 2, 2005, Ms. Biddy filled out a written request for medical treatment complaining of a "high fever, body aches, lungs hurt, chills."  She was seen the following day by Louis Campbell, a physician's assistant from the Jackson County Memorial Hospital, whose practice was to visit the jail once a week on  Thursdays.

Examining Ms. Biddy, Mr. Campbell noticed Ms. Biddy's eye and asked if there had been any change in it.  Ms. Biddy responded that she had experienced a sudden loss of vision.  Mr. Campbell confirmed a loss of vision.  He also noted that

Ms. Biddy had a history of oxycontin abuse.  He apparently attributed her high fever, body aches, painful lungs, and chills to symptoms of drug withdrawal.  He ordered no blood tests and prescribed no antibiotics.  Rather, he prescribed 800 milligrams of ibuprofen and recommended that she be taken to the emergency room for evaluation of her eye. The jail uses the emergency room physicians for routine as well as emergency care.   Mr. Campbell's subsequently-typed transcription of his notes shows an entry directing that she be taken to the emergency room "as soon as possible."   It is unclear whether jail personnel received a copy of the typed notation.

No evaluation of Ms. Biddy's eye had taken place by Monday, March 7, 2005, when she again filled out a written request for medical treatment.  In this second request, she complained of "back pain."  Sometime in the late morning or early afternoon of Thursday, March 10, 2005, she was seen again by Mr. Campbell.  His examination revealed that Ms. Biddy's blood pressure had dropped below normal limits and that she had edema.  He recommended that she be taken to the emergency room that day for blood tests.  In addition, he again recommended evaluation of her left eye.  In accordance with apparent jail practice, Ms. Biddy was transported to the emergency room after 11:00 p.m. on March 10, 2005.  Upon arrival she complained of blindness in her left eye and pain in her left hip.  While awaiting the results of blood tests, Ms. Biddy collapsed in respiratory distress.  She died at noon on March 11, 2005, as a result of sepsis.

Angela Biddy's mother and natural guardian, Tonya Simmons, brought this action against the defendants alleging that they unconstitutionally denied or delayed medical treatment to Ms. Biddy and that as a result she experienced extreme pain and ultimately death.

3

<u>Analysis</u>

Because Ms. Biddy was incarcerated pending the disposition of charges against her, she is considered a pretrial detainee and is guaranteed the protections of the Fourteenth Amendment.  Under the Fourteenth Amendment's due process clause, pretrial detainees are entitled to at least "the same degree of protection regarding medical attention as that afforded convicted inmates under the Eighth Amendment." <u>Frohmader v. Wayne</u>, 958 F.2d  1024, 1028 (10th Cir. 1992).  The Eighth Amendment requires jail officials to "provide humane conditions of confinement by ensuring inmates receive that basic necessities of adequate food, clothing, shelter, and medical care and by taking reasonable measures to guarantee the inmates' safety." <u>Barney v. Pulsipher</u>, 143 F.3d 1299, 1310 (10th Cir. 1998). Jail officials violate the due process clause of the Fourteenth Amendment when they are deliberately indifferent to an inmate's "serious medical needs." *See* <u>Estelle v. Gamble</u>, 429 U.S. 97, 104 (1976).  Deliberate indifference requires a higher degree of fault than negligence, or even gross negligence. <u>Barrie v. Grand County, Utah</u>, 119 F.3d 862, 869 (10th Cir. 1997).  Specifically, "an official or municipality acts with deliberate indifference if its conduct (or adopted policy) disregards a known or obvious risk that is very likely to result in the violation of a prisoner's constitutional rights." *Id.* at 869.  Whether a jail official possessed the requisite knowledge of a "substantial risk of serious harm" is a question of fact "subject to demonstration in the usual ways, including inference from circumstantial evidence." <u>Mata v. Saiz</u>, 427 F.3d 745, 752 (10th Cir. 2005).  A fact finder may conclude that a jail official knew of a substantial risk "from the very fact that the risk was obvious." *Id.*

The test for determining whether an official has acted with deliberate indifference so as to violate the constitutional rights of a jail inmate includes an objective and a subjective prong.  The objective prong is satisfied by a factual

showing that the inmate's medical need was "objectively sufficiently serious, and that the defendants' delay in meeting that need caused her substantial harm." <u>Mata</u>, 427 F.3d at 752.

1.    <u>Jackson County's Potential Liability</u>

Both the defendants and the plaintiff argue they are entitled to summary judgment in their favor on the issue of Jackson County's liability for the alleged violation of Ms. Biddy's constitutional rights.  The defendants argue that they are entitled to summary judgment because Ms. Biddy suffered no constitutional deprivation.  They maintain that "the plaintiff cannot show that [Ms.] Biddy's eye condition was sufficiently serious to warrant immediate medical attention, or that the jail was deliberately indifferent to her needs."  They contend, despite Ms. Biddy's report of a sudden loss of vision, that the problem was one of "long-standing duration."  They also place great emphasis upon Ms. Biddy's apparent failure to react with the degree of distress and agitation a sudden lack of vision would be expected to provoke.  They suggest her "nonchalant demeanor" undermined the credibility of her complaints and that as a result, physician's assistant Louis Campbell saw no reason to recommend emergency care.  In light of Ms. Biddy's demeanor, the defendants argue deliberate indifference cannot be inferred from jail officials delaying the recommended evaluation of Ms. Biddy's eye problem for seven days, or its delay in transporting her for blood work for several hours.

The defendants overlook important issues of material fact from which a jury could conclude that jail officials were indeed indifferent to Ms. Biddy's serious medical needs.  Although the defendants attempt to limit the discussion of Ms. Biddy's medical condition to the condition of her left eye, she complained of

numerous other symptoms.    During the period following Mr. Campbell's prescription of ibuprofen to Ms. Biddy, the record shows that her symptoms did not subside, but worsened.   The jail's logs reveal that in the early hours of March 6, 2005, Ms. Biddy appeared to be "in pain, shaking, rocking, and she was very hot to the touch."   In the early hours of March 7, she was "clammy and shaking," and reported that she was "vomiting, running a fever, body aches, and her left arm is numb and she has not eaten since she was brought."   On the evening of March 7, she was observed by jailers to be "laying on the floor having what appeared to be a seizure" – a seizure the jailers evidently dismissed as having been faked.

Over the course of her incarceration, Ms. Biddy looked "worse and worse." She "looked like death," and repeatedly requested to be taken to the emergency room.   It is undisputed that Ms. Biddy reported being "in real bad pain."   The plaintiff has proffered the report of Dr. Andrew Hoelscher in which he states that severe and unrelenting pain would be incident to the sepsis from which Ms. Biddy suffered.   The defendants' expert witness, Dr. Shawn Smith, stated in his deposition that he did not disagree with Dr. Hoelscher's conclusion that Ms. Biddy suffered significant pain.

Ms. Biddy's symptoms were evidently numerous and were acknowledged by her jailers.   However, the evaluation of a deliberate indifference claim is not limited to an assessment of an inmate's symptoms.   When delay of medical attention allegedly results in harm to an inmate, the question raised by the objective prong of the deliberate indifference test is whether the alleged harm is sufficiently serious to be cognizable under the Fourteenth Amendment.   *See* Mata, 427 F.3d at 753.   Here the plaintiff has presented evidence to show that the harm suffered by Ms. Biddy allegedly as a result of delayed medical attention was extreme pain and

death.   Severe unnecessary pain alone can constitute serious harm.   *See* Mata at 754-55.   Certainly, death resulting from delayed medical attention constitutes a serious harm.   Furthermore, even a brief delay of medical treatment may be unconstitutional where it causes needless pain or a worsening of condition. *Id.* at 755; Kikumura v. Osagie, 461 F.3d 1269 (10th Cir. 2006).

The uncontroverted facts show that Ms. Biddy was not transported to the emergency room for seven days following the physician assistant's first directive that her eye be evaluated by a physician.   She was not take to the emergency room for at least nine to ten hours after the physician's assistant determined her blood pressure to be below normal limits, directed that she be taken to the emergency room for blood work, and repeated his order that her eye be examined by a physician.   The defendants argue that those delays should not be viewed as unreasonable because jail personnel understood the physician's assistant's instruction to contemplate that Ms. Biddy would be taken to the emergency room as the jail's "situation and manpower" allowed.   There is nothing in the record, however, to suggest that the jail's "situation and manpower" necessitated that Ms. Biddy's treatment be delayed.   The court thus concludes that the plaintiff has raised genuine issues of material fact regarding the objective component of the deliberate indifference test.

As to the subjective component of the deliberate indifference test, the plaintiff has presented evidence supporting an inference that Sheriff Roberts adopted and maintained a policy which he knew presented a substantial risk of harm to inmates' health.   For example, it is undisputed that the jail standards in effect at the time of Ms. Biddy's incarceration required that inmates receive medical attention within 48 hours of a request.   However, the record contains evidence that Sheriff Roberts maintained a policy of delaying  medical attention for

seven to ten days after it was requested by an inmate or ordered by the jail's retained physician's assistant.   While violation of the jail standards is not dispositive on the issue of a policy's constitutionality, the jail standards do provide "persuasive authority" regarding what the constitution requires.   *See* Lopez v. LeMaster, 172 F.3d 756, 761 (10th Cir. 1999).   Furthermore, as the defendants admit, Sheriff Roberts himself testified in his deposition that the actions undertaken by the Jackson County jailers with respect to Ms. Biddy's access to medical care were all in accord with his established policies and procedures.

The defendants insist that a policy of delayed medical attention for routine requests was reasonable because expedited care was available in the case of an emergency.   However, the record contains facts supporting a conclusion that it was primarily the jailers who were responsible for initiating emergency care and Sheriff Roberts failed to provide the jailers with any training in how to distinguish between emergency and routine medical needs.   It is obvious that emergency medical needs are substantially certain to arise in an institution that detains inmates of varying ages and states of health.   The risk presented by a policy of providing jailers with no training while incorporating a seven to ten day delay of medical care to inmates whose needs have not been determined to be emergencies may be so obvious as to lead a reasonable jury to conclude that Sheriff Roberts, in adopting and maintaining such a policy, disregarded a substantial known risk to inmates' health.   *See* Board of County Com'rs of Bryan County, Okla. v. Brown, 520 U.S. 397, 409-10 (1997); City of Canton, Ohio v. Harris, 489 U.S. 378 at 390 and n. 10 (1989).   The court finds there are genuine issues of material fact with respect to the second, subjective prong of the deliberate indifference test which preclude summary judgment in favor of the Board of County Commissioners of Jackson County and Sheriff Morris Roberts in his official capacity.

The plaintiff asserts that her claims against Jackson County may be established without recourse to the second, subjective prong of the deliberate indifference test. She cites <u>Berry v. City of Muskogee, Okl.</u>, 900 F.2d 1489, 1498 (10th Cir. 1990), for the proposition that only the objective prong is relevant when a plaintiff seeks to hold a municipality liable for constitutional violations under §1983. It appears the plaintiff may understandably confuse the deliberate indifference test set forth in <u>Farmer v. Brennan</u>, 511 U.S. 825 (1994), for establishing Eighth Amendment (or in this instance Fourteenth Amendment) violations, and the deliberate indifference test set forth in <u>Canton</u> for establishing a municipality's §1983 liability for the constitutional violations of its agents and employees. Governmental entities are not generally responsible for constitutional violations committed by their agents or employees. There is no *respondent superior* liability under §1983. For a governmental entity to be liable under §1983, "it must have caused the harm through the execution of its own policy or custom by those whose edicts or acts may fairly be said to represent official policy." <u>Meade</u>, 841 F.2d at 1529. By focusing on a policy or custom, the court ensures that the governmental entity "is held liable only for those deprivations resulting from the decisions of its duly constituted legislative body or of those officials whose acts may fairly be said to be those of the [governmental entity]." <u>Brown</u>, 520 U.S. at 403-404. Recognizing the inherent difficulties in establishing a subjective state of mind for a governmental entity, the Supreme Court in <u>Canton</u> adopted an objective standard that is satisfied if the risk of serious harm is so obvious that the governmental entity should have known of it.

The objective <u>Canton</u> test is only implicated in this case only to the extent that the plaintiff seeks to hold Jackson County liable for the conduct of the jail's non-policy making employees. To the extent that she is seeking to hold Jackson

County liable for Sheriff Roberts' official acts, it is well established that such acts are binding upon the county. *See* <u>Kentucky v. Graham</u>, 473 U.S. 159, 165-66 (1985) (an official capacity suit against sheriff is treated as a claim against the county); <u>Lopez</u>, 172 F.3d at 763. If a jury determines that Sheriff Roberts was responsible for policies or customs evidencing deliberate indifference to jail inmates' serious medical needs, his deliberate indifference may be attributed to Jackson County. *See* <u>Brown</u>, 520 U.S. at 403-04 (reaffirming that a municipality may be held liable for deprivations resulting from the conduct of those officials whose acts may fairly be said to be those of the municipality). The defendants' argument that the Board of County Commissioners cannot be held liable absent a showing that its members themselves acted with deliberate indifference is without merit.

Before the plaintiff can establish Jackson County's liability for the official acts of Sheriff Roberts, she must first establish that Sheriff Roberts was deliberately indifferent to Ms. Biddy's serious medical needs and this requires that she satisfy not only the objective prong of the <u>Farmer</u> test, but also its subjective prong. As discussed above, the court concludes that the plaintiff's evidence that Sheriff Roberts maintained policies and customs subjecting inmates to unconstitutional delays of medical care and failed to train jail personnel to recognize emergency medical conditions raises genuine issues of material fact with regard to the subjective prong of the deliberate indifference test. Because numerous material factual issues remain to be resolved by the trier of fact, including issues regarding the extent to which the jail's alleged failure to provide timely medical attention actually caused the harm suffered by Ms. Biddy, summary judgment in the plaintiff's favor must be denied.

2.      Sheriff Roberts' Assertion of Qualified Immunity

The defendants assert that Sheriff Roberts' qualified immunity entitles him to summary judgment in his favor on the plaintiff's claims against him in his individual capacity.[1]   Public officials performing discretionary functions are entitled to qualified immunity in a civil action for damages in those instances where their conduct does not violate clearly established constitutional rights of which a reasonable person would have been aware.  Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982).   Once a defendant pleads a defense of qualified immunity, the court must first determine, as a matter of law, whether the plaintiff has alleged the violation of a clearly established constitutional right.  Siegert v. Gilley. 500 U.S. 226, 231 (1991).  Next, the defendant "must demonstrate no material issues of fact remain about the objective reasonableness of his or her action in light of the law and the information he or she possessed at the time."  Howard v. Dickerson, 34 F.3d 978, 981 (10th Cir. 1994).

---

[1]In conjunction with their argument on the issue of Sheriff Roberts' qualified immunity, the defendants contend that Sheriff Roberts cannot be liable for violating Ms. Biddy's rights because he had no contact with her and no personal involvement in her care.  United States Supreme Court and Tenth Circuit authority make clear that officials may be held liable under 42 U.S.C. §1983 when their own acts, including their policies, practices and procedures, violate a jail inmate's fourteenth amendment rights.  See Farmer v. Brennan, 511 U.S. 825.  This is true even if the offending policy, practice, or procedure is unwritten.  See Berry v. City of Muskogee, Okl., 900 F.2d at 1499; Lopez v. LeMaster, 172 F.3d 756 (holding that a county sheriff may be personally liable for injuries suffered by in inmate due to the sheriff's practice of failing to adequately staff the jail).

In addition to being responsible for his or her own misconduct, a supervisory official may be held liable for unconstitutional acts committed by a subordinate when an affirmative link connects that act to the supervisor.  To be held liable under §1983, a supervisor "must have participated or acquiesced in the constitutional deprivations of which complaint is made." Meade v. Grubbs, 841 F.2d at 1528 (internal quotation marks and citation omitted).   An "affirmative link" must exist between the constitutional deprivation and either the supervisor's personal participation, his exercise of control or direction, or his failure to supervise.  Id. at 1527.  This link is satisfied if "a supervisor has established or utilized an unconstitutional policy or custom."  Id. At 1528; Berry, at 1496.

Here the plaintiff has alleged that Sheriff Roberts was deliberately indifferent to her serious medical needs. "There is little doubt that deliberate indifference to an inmate's serious medical need [was] a clearly established constitutional right" at the time of Ms. Biddy's incarceration. *See* Mata, at 427. The court has already determined that the plaintiff's evidence supports a reasonable inference that Sheriff Roberts' conduct, including his adoption of jail policies and practices, resulted from deliberate indifference. Thus, the defendants have failed to establish the objective reasonableness of Sheriff Roberts' actions. The defendant's motion for summary judgment on the ground of Sheriff Roberts' qualified immunity must be denied.

Conclusion

For the reasons set forth above, the court finds that both the  defendants' motion for summary judgment, and the plaintiff's motion for partial summary judgment should be and hereby are denied.

ENTERED this 11th day of December, 2006.

STEPHEN P. FRIOT
UNITED STATES DISTRICT JUDGE

06-0079p038(pub).wpd

12